# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

| | | |
|---|---|---|
| KERRY HIRTH, HENNINGS JOINT TRUST, VAN DIEST FAMILY, LLC, RLIJ, FREE SOIL FOUNDATION, KING INTERVENORS, CHARLES CITY AREA DEVELOPMENT CORPORATION, | | No. C24-2046-LTS-MAR |
| Plaintiffs, | | |
| vs. | | **MEMORANDUM OPINION AND ORDER** |
| IOWA UTILITIES COMMISSION, SARAH MARTZ, ERIK HELLAND, JOSHUA BYRNES, SUMMIT CARBON SOLUTIONS, LLC, | | |
| Defendants. | | |

## I.     INTRODUCTION

This matter is before me on two motions to dismiss.  The first (Doc. 21) was filed by defendant Summit Carbon Solutions, LLC (Summit Carbon).  The plaintiffs have filed a resistance (Doc. 32) and Summit Carbon has filed a reply (Doc. 35).  The second (Doc. 34) was filed by defendants Iowa Utilities Commission (IUC)[1] and IUC members Sarah Martz, Erik Helland and Joshua Byrnes.  The plaintiffs have filed a resistance (Doc. 40).  Oral argument is not necessary.  *See* Local Rule 7(c).  For the reasons that follow, both motions will be granted.

---

[1] Summit Carbon notes that prior to June 1, 2024, the IUC was known as the Iowa Utilities Board.  Doc. 25 at 1 n.1; *see also* Press Release, Iowa Utilities Commission, *Iowa Utilities Board is Now Iowa Utilities Commission* (July 2, 2024), https://iuc.iowa.gov/press-release/2024-07-02/iowa-utilities-board-now-iowa-utilities-commission.  I will refer to it as the IUC.  In addition, except as necessary to address the IUC member-defendants separately, I will address the IUC and its member-defendants collectively as the IUC.

## II. BACKGROUND

Plaintiffs[2] filed their initial complaint on September 10, 2024, and an amended complaint on September 20, 2024. Docs. 1, 3. According to the amended complaint, Summit Carbon is constructing an interstate pipeline to transport and deliver captured carbon dioxide ($CO_2$). Doc. 3 at 4, ¶ 4. Pursuant to Iowa law, to construct and operate the project in Iowa, Summit Carbon was first required to obtain a permit from the IUC. Doc. 25 at 1; *see also* Iowa Code § 479B.4. On June 25, 2023, the IUC issued a "Final Decision and Order" (Final Decision) approving a permit for Summit Carbon. Doc. 3 at 6, ¶ 34.

Plaintiffs assert a variety of claims related to the IUC's decision-making process. They allege that jurisdiction is proper under 28 U.S.C. § 1331, as this action arises under several provisions of the United States Constitution, including the Supremacy Clause, the Contract Clause, the Commerce Clause and the Eminent Domain Clause. *Id.* at 3, ¶ 9. Additionally, plaintiffs contend that this court has jurisdiction under 28 U.S.C. § 1343 because the defendants, under the color of state law, deprived plaintiffs and their constituents of property without due process of law. *Id.* at ¶ 10. Finally, plaintiffs assert that this court has supplemental jurisdiction to consider their state law claims under 28 U.S.C. § 1367(a). *Id.* at ¶ 11.

The amended complaint is hardly a model of precision. It commingles factual and legal claims, making it difficult to determine what factual allegations support which legal claims and which particular plaintiffs intend to join in each claim. Giving the amended complaint a generous interpretation, it appears to allege the following claims: (1) the IUC's Final Decision violated the due process provisions in Chapter 17A of the Iowa Code (*Id.* at 11, ¶ 54); (2) the IUC violated the plaintiffs' Fifth and Fourteenth

---

[2] The named plaintiffs are Kerry Hirth, Hennings Joint Trust, Van Diest Family LLC, RLIJ, Charles City Area Development Corporation (CCADC), Free Soil Foundation and King Intervenors. Doc. 3 at 1-2. Each plaintiff's role and alleged standing will be addressed later in this order.

Amendment due process rights (*Id.* at 12, ¶ 63); (3) Summit Carbon's project does not satisfy the test for "public use" required by Iowa law for eminent domain (*Id.* at 17, ¶ 84); (4) Summit Carbon's project uses eminent domain for private gain, which is prohibited by Iowa law and the United States Constitution (*Id.* at 19, ¶ 89); and (5) the IUC failed to consider the consequences if Summit Carbon did not follow the federal Pipeline Hazardous Materials Safety Administration (PHMSA) standards, thereby violating the Supremacy Clause (*Id.* at 25, ¶ 118).

The amended complaint includes the following factual allegations:

25. On January 28, 2022, Summit Carbon Solutions, LLC filed its petition to construct, operate, and maintain 688.01 miles of supercritical $CO_2$ pipeline in Iowa.

26. From August 22 through November 8, 2023, hearings were held in Iowa.

27. Bob Van Diest testified on behalf of Van Diest, LLC, on 9/26/2023. However, his testimony was limited in time and scope, disregarded by the board, and thus he was denied due process.

28. Petitioner Kerry Hirth is a landowner whose land will be affected by the pipeline. She was additionally denied due process due to the IUC constantly changing speaker rules and policies and subsequent issues with being denied the ability to testify.

29. Petitioner Carole Hennings, through Former Congressman Steve King, attempted to testify on her behalf at the November 6th hearing. She was not able to testify due to recent heart surgery. She had notified the IUC of this, and they replied, "Okay." When Mr. King arrived, personnel checked him in and gave him a "witness" tag to wear to be recognized for his testimony; however, when it was his time to testify on Mrs. Henning's behalf, the chairman allowed no response. "Okay," plus the muzzling of a recognized witness destroyed Mrs. Henning's right to be heard; the record,

3

big as it is, is necessarily incomplete when material witnesses are prohibited from testifying.

32. On July 10, 2024, RLIJ requested that the [IUC] authorize the RLIJ to intervene in the case.

33. On July 19, 2023, the Iowa Utilities Commission granted RLIJ's petition to intervene.

34. On June 25, 2023, the Iowa Utilities [Commission] issued its "Final Decision and Order" approving, subject to certain limitations and conditions, a permit for Summit Carbon Solutions, LLC.

35. The RLIJ submitted a "Motion to Reconsider" the final decision July 15, 2023.

36. The Petitioners assert that the order contains findings that, when analyzed in light of the full evidence before the Commission, are in error; and its substantive legal conclusions are contrary to binding precedent, statutes, and Constitutional principles.

37. Scores of Iowans submitted thousands of pages of testimony and comments. Everyday Iowans and state legislators showed not with conjecture or anecdote, but with evidence, that this pipeline was not only a bad idea, but as proposed, violated Iowa law. However, it falls well outside the restrictions placed upon grants of Eminent Domain in the Iowa Constitution and in the Iowa Code. In spite of the evidence, the Board approved the CO2 hazardous liquid pipeline on June 25th.

38. On August 15, 2024, the IUC filed a notice indicating that because the IUC had not taken action on the motions to reconsider on or before August 14, 2024 (30 days after the last motion to reconsider was filed), the motions were deemed denied by operation of law.

40. If given the chance, landowner petitioners only had a few opportunities to submit comments in testifying. Moreover, the IUC and the testimony

4

process were confusing and often misleading, causing Iowans to lose their ability to testify against the pipeline.

51.     Charles City is one of the many communities this CO2-hazardous liquid pipeline impacts.  As proposed, the Summit's hazardous CO2 pipeline would bisect Charles City Area Development Corporation's (CCADC) Avenue of the Saints Development Park.

Doc. 3.

Summit Carbon filed its motion (Doc. 21) to dismiss on October 14, 2024. The IUC's motion (Doc. 34) to dismiss was filed on November 14, 2024.  Both motions invoke Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## III.     APPLICABLE STANDARDS

### A.     Rule 12(b)(1) Standards

Rule 12(b)(1) permits a party to seek dismissal for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  The federal courts are courts of limited jurisdiction that "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."  *Marine Equip. Management Co. v. United States*, 4 F.3d 643, 646 (8th Cir. 1993).  The Federal Rules of Civil Procedure authorize a motion to dismiss a complaint due to a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  The burden of proving subject matter jurisdiction is on the plaintiff.  *V S Ltd. Partnership v. Dept. of Housing and Urban Development*, 235 F.3d 1109, 1112 (8th Cir. 2000) (citing *Nucor Corp. v. Nebraska Pub. Power Dist.*, 891 F.2d 1343, 1346 (8th Cir. 1989)).  Moreover, a federal court has a special obligation to consider *sua sponte* whether it has subject matter jurisdiction in every case.  *Hart v. United States*, 630 F.3d 1085, 1089 (8th Cir. 2011).

If a plaintiff lacks standing to pursue a claim, then the court has no subject matter jurisdiction.  *Brooks v. City of Des Moines, Iowa*, 844 F.3d 978, 979 (8th Cir. 2016). "Therefore, a standing argument implicates Rule 12(b)(1)."  *Faibisch v. Univ. of*

5

*Minnesota*, 304 F.3d 797, 801 (8th Cir. 2002). When determining standing, the emphasis is on whether the plaintiff "possesses a legally cognizable interest, or 'personal stake,' in the outcome of the action." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (quoting *Camreta v. Greene*, 563 U.S. 692, 701 (2011)). Generally, a plaintiff must assert his or her own legal rights and cannot assert the legal rights of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

The doctrine of standing ensures that courts hear only "those disputes which are appropriately resolved through the judicial process." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). As the Supreme Court has explained:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

> The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.

*Id.* at 560–61 (citations omitted) (quotations omitted); *see also City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007). The requirement of standing "ensures that [judges] act *as* judges, and do not engage in policymaking properly left to elected representatives." *Hollingsworth v. Perry*, 570 U.S. 693, 700 (2013) (emphasis omitted). "The standing inquiry is both plaintiff-specific and claim-specific. Thus, a reviewing court must determine whether each particular plaintiff is entitled to have a federal court adjudicate each particular claim that he asserts." *Pagan v. Calderon*, 448 F.3d 16, 26 (1st Cir. 2006) (citing *Allen v. Wright*, 468 U.S. 737, 752 (1984)).

6

Similarly, "[t]he issue of ripeness, which has both Article III and prudential components, is one of subject matter jurisdiction." *Dakota, Minnesota & Eastern Railroad Corp. v. South Dakota,* 362 F.3d 512, 520 (8th Cir.2004). The court must consider it, even if parties do not raise it. *Id.* Such a challenge is properly entertained on a Rule 12(b)(1) motion. *Johnson v. United States,* 534 F.3d 958, 964 (8th Cir. 2008).

Finally, if a claim is barred by sovereign immunity, then the court has no subject matter jurisdiction. *See Estate of Henry through Barrett v. Schwab*, No. 6:18-CV-2090, 2019 WL 4888575, at *2 (N.D. Iowa Oct. 3, 2019) ("Questions of sovereign immunity fall squarely within the province of a 12(b)(1) motion because, if immunity is present for a claim, the Court lacks subject matter jurisdiction over that claim.") (citing *Mumford v. Godfried*, 52 F.3d 756, 758 (8th Cir. 1995)).

Where a party limits its subject matter jurisdiction attack to the face of the complaint, the attack is a "facial challenge." *Jones v. United States*, 727 F.3d 844, 846 (8th Cir. 2013). When presented with a facial challenge, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.* (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (quotations omitted)). Those protections include treating the complainant's factual allegations as true and dismissing the action only if it appears beyond a doubt that the complainant can prove no set of facts in support of its claim that would entitle it to relief. *Osborn*, 918 F.2d at 729 n.6.

By contrast, when a party makes a factual challenge to the district court's jurisdiction pursuant to Rule 12(b)(1), "no presumptive truthfulness attaches to the [complainant's] allegations, and the existence of disputed material facts will not preclude [the court] from evaluating . . . the merits of the jurisdictional claims." *Iowa League of Cities v. EPA*, 711 F.3d 844, 861 (8th Cir. 2013) (quoting *Osborn*, 918 F.2d at 729–30 & n.6) (quotations omitted). Where the challenge is factual, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). "[T]he court may look beyond the

7

pleadings and 'the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (citation omitted). The court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004).

Here, the attack is facial, not factual, as the defendants argue that the plaintiffs' allegations do not meet the legal requirements to establish standing.[3]  Additionally, the IUC argues that the plaintiffs' allegations regarding the Takings Clause do not meet the legal requirements to establish ripeness, and that in any case, their lawsuit against it is barred by sovereign immunity.  Doc. 34-1 at 13-17.  As such, I will consider only the parties' pleadings.

### B.      Rule 12(b)(6) Standards

The Federal Rules of Civil Procedure authorize a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). The Supreme Court has provided the following guidance in considering whether a pleading properly states a claim:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)).  A pleading that offers "labels

---

[3]  In their respective motions, Summit Carbon and the IUC argue that the organizational plaintiffs—RLIJ, Free Soil Foundation and King Intervenors—do not have standing to assert any claims.  Doc. 25 at 21; Doc. 34-1 at 11.  The IUC further argues that Hirth, Hennings, Van Diest and CCADC do not have standing to assert a Fifth Amendment Takings Clause claim. Doc. 34-1 at 10.

and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Also, courts "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). While factual plausibility is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable legal theory. *See, e.g.*, *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Commonwealth Prop. Advocates, L.L.C. v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011); *Target Training Intern., Ltd. v. Lee*, 1 F. Supp. 3d 927, 937 (N.D. Iowa 2014).

In considering a Rule 12(b)(6) motion to dismiss, ordinarily the court "cannot consider matters outside the pleadings without converting the motion into a motion for summary judgment." *McMahon v. Transamerica Life Ins. Co.*, No. C17-149-LTS, 2018 WL 3381406, at *2 n.2 (N.D. Iowa July 11, 2018); *see* Fed. R. Civ. P. 12(b)(6). On the other hand, when a copy of a "written instrument" is attached to a pleading, it is

considered "a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Thus, when the pleadings necessarily embrace certain documents, I may consider those documents without turning a motion to dismiss into a motion for summary judgment. *McMahon*, 2018 WL 3381406 at *2 n.2. These documents include "exhibits attached to the complaint." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

When a complaint does not state a claim for relief that is plausible on its face, the court must consider whether it is appropriate to grant the pleader an opportunity to replead. The rules of procedure permit a party to respond to a motion to dismiss by amending the challenged pleading "as a matter of course" within 21 days. *See* Fed. R. Civ. P. 15(a)(1)(B). Thus, when a motion to dismiss highlights deficiencies in a pleading that can be cured by amendment, the pleader has an automatic opportunity to do so. When the pleader fails to take advantage of this opportunity, the question of whether to permit an amendment depends on considerations that include:

> whether the pleader chose to stand on its original pleadings in the face of a motion to dismiss that identified the very deficiency upon which the court dismissed the complaint; reluctance to allow a pleader to change legal theories after a prior dismissal; whether the post-dismissal amendment suffers from the same legal or other deficiencies as the dismissed pleading; and whether the post-dismissal amendment is otherwise futile.

*Meighan v. TransGuard Ins. Co. of Am.,* 978 F. Supp. 2d 974, 982 (N.D. Iowa 2013).


## IV.  DISCUSSION

### A.  Rule 12(b)(1) Analysis

#### 1.  Justiciability

The defendants assert that several justiciability doctrines bar the plaintiffs' claims. As the court has an obligation to ensure that it has subject matter jurisdiction over all claims presented, I will start by addressing those.

First, I will address the plaintiffs' challenge to the IUC's Final Decision to grant Summit Carbon a permit. The IUC argues that this challenge is barred by the Eleventh

Amendment. Doc. 34-1 at 15. The plaintiffs assert that the IUC's actions are not protected by sovereign immunity as it has "exceeded its lawful authority." Doc. 40 at 11.

Next, I will determine if the plaintiffs' Takings Clause claims are barred by sovereign immunity as to the IUC, and whether they have alleged sufficient facts to establish Summit Carbon as a state actor. Additionally, I will determine if the plaintiffs' claims are ripe and whether they have standing to assert such claims.

Finally, I will address the procedural due process claims asserted by plaintiffs Kerry Hirth, Hennings Joint Trust, Van Diest Family LLC and Kings Intervenors. I will determine if the plaintiffs' claims are ripe, if they have standing and whether sovereign immunity operates as a bar to their respective claims.

### a. General Challenge to Iowa Agency Action – Sovereign Immunity

The plaintiffs appear to challenge the entirety of the Final Decision, which granted a permit to Summit Carbon. They list various Iowa Code provisions, which they assert "ensure that decisions are made transparently, based on substantial evidence, and that all parties know the reasoning behind the rulings." Doc. 3 at 11, ¶ 60. They assert that "[t]he IUC's decision is sparse on substantial evidence for each eminent domain consideration." *Id.* at ¶ 61. Specifically, they contend that the Final Decision neglects to consider the consequences if Summit Carbon fails to follow the federal Pipeline

11

Hazardous Materials Safety Administration's requirements, or even if they apply.[4]  *Id.* at 25, ¶ 118.

The IUC argues that because it is a state agency within the Iowa Department of Commerce, the plaintiffs' claims against it are barred by sovereign immunity.  Doc. 34-1 at 15.  The plaintiffs maintain that since IUC exceeded its lawful authority, the "shield of sovereign immunity" is removed, and the Eleventh Amendment is not a bar to enjoining unconstitutional state actions.[5]  Doc. 40 at 11-12.

Generally, the Eleventh Amendment and the doctrine of sovereign immunity immunizes states from suit.  *Pharm. Rsch. & Manufacturers of Am. v. Williams*, 64 F.4th 932, 948 (8th Cir. 2023).  However, *Ex Parte Young*, 209 U.S. 123 (1908), carves out a narrow exception "allowing suits for prospective injunctive relief against state officials sued in their official capacities, but not suits for prospective injunctive relief against state agencies."  *Wolk v. City of Brooklyn Ctr.*, 107 F.4th 854, 858 (8th Cir. 2024) (citing *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007)).  The same rule applies to lawsuits against state boards and commissioners in their official capacities, as the state

---

[4] In making this argument, the plaintiffs cite the "Supremacy Clause" as an additional basis for this court's jurisdiction.  Doc. 3 at 3, ¶ 9.  However, this argument merely challenges the IUC's decision as arbitrary and capricious.  The Supremacy Clause of the United States Constitution states that the "law of the United States" is "the supreme Law of the Land."  U.S. Const. art. VI, cl.2.  "This means state laws that conflict with federal laws or regulations are invalid and unenforceable."  *Couser v. Shelby Cnty. Iowa*, 681 F. Supp. 3d 920, 934 (S.D. Iowa 2023) (citing *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978)).  Here, the plaintiffs do not contend that an Iowa law conflicts with federal law.  Rather, they allege that the IUC failed to consider the *effect* of federal law in awarding a permit to Summit Carbon.  Doc. 3 at 25, ¶ 118. Therefore, I will consider this argument as part of the plaintiffs' general challenge to the IUC's decision-making process.

[5] It is unclear whether the plaintiffs intended to include IUC as an independent defendant in its lawsuit.  *Compare* Doc. 3 at 1 ("the Defendants, Iowa Utilities Commission Members") *with* Doc. 34 at 3 ("Plaintiffs' action is barred as to Defendants Commission and Commissioners") *and* Doc. 40 at 11-12 (discussing the plaintiffs right to sue IUC in its entirety).  As such, the following analysis will address the propriety of a lawsuit against both IUC and its members.

is the party of interest. *See EEE Minerals, LLC v. State of N. Dakota*, 81 F.4th 809, 815 (8th Cir. 2023) (holding that sovereign immunity applies to a lawsuit against "the Lands Board and the Commissioner in his official capacity, because 'the state is the real, substantial party in interest.'") (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984)).

Nonetheless, "[i]t has long been recognized that a state may waive its Eleventh Amendment immunity." *Entergy, Arkansas, Inc.. v. Nebraska*, 210 F.3d 887, 896 (8th Cir. 2000). One way that a state can do so is by enacting a statute that "consents to be sued." *Terrace Hill Soc'y Found. v. Terrace Hill Comm'n*, 6 N.W.3d 290, 295 (Iowa 2024) (citing Iowa Code § 17A.19(1) as an example of waiving sovereign immunity for judicial review of agency actions). Here, the plaintiffs are challenging an IUC agency action. Pursuant to Iowa Code § 17A.19(1), Iowa has consented to be sued in matters challenging agency action. However, "[a] state does not submit to federal jurisdiction by consenting to suit in its own courts." *Entergy, Arkansas, Inc.*, 210 F.3d at 897.

The Iowa Code's judicial review provision makes clear that it is the "exclusive means by which a person or party who is aggrieved or adversely affected by agency action may seek judicial review of such agency action." Iowa Code § 17A.19; *see also Climbing Kites LLC v. Iowa*, 739 F. Supp. 3d 742, 761 (S.D. Iowa 2024); *see also Brakke v. Iowa Dep't of Nat. Res.*, 897 N.W.2d 522, 530 (Iowa 2017) ("judicial review of agency decisions is governed by Iowa Code § 17A.19"). After exhausting all administrative remedies for final agency action, a party may proceed with a petition for judicial review in "Polk county district court or in the district court in which the petitioner resides or has its principal place of business." Iowa Code § 17A.19(2). Although § 17A.19 waives sovereign immunity in Iowa state courts, it is silent regarding a plaintiff's ability to challenge final state agency action in a federal lawsuit.

Because the State of Iowa has not expressly consented to be sued in federal court for judicial review of final agency action, the plaintiffs' challenge to the IUC's Final Decision in this court is barred by sovereign immunity. The fact that the plaintiffs seek

13

judicial review of the IUC's decision via the Declaratory Judgment Act does not change the analysis. "[T]he operation of the Declaratory Judgment Act is procedural only." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (cleaned up). It does not create a new basis for subject matter jurisdiction. *Id.*; *see also Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) ("the Declaratory Judgment Act . . . does not provide an independent basis for federal jurisdiction.").

Additionally, when a party seeks a declaratory judgment and fails to follow the Chapter 17A judicial review process, it "bears the burden of demonstrating why it should be permitted to enter court prematurely." *Williams Pipe Line Co. v. Bayer Corp.*, 964 F. Supp. 1300, 1334 (S.D. Iowa 1997). Litigants have been permitted to bypass the exhaustion requirement in the following limited situations: (1) "plaintiff challenges, by way of judicial review under Iowa Code section 17A.19, an agency action as in violation of the rulemaking procedures set forth under the APA," (2) "plaintiff claims an adequate administrative remedy does not exist for the claimed wrong" or (3) "plaintiff claims that the applicable statute does not expressly or implicitly require that all adequate administrative remedies be exhausted prior to bringing an action in district court." *IES Utilities Inc. v. Iowa Dep't of Revenue & Fin.*, 545 N.W.2d 536, 539 (Iowa 1996) (emphasis omitted). The plaintiffs do not meet any of the requirements to bypass the exhaustion requirement. They do not assert that they lack an adequate administrative remedy or that the statute does not require exhaustion.

As a result, the plaintiffs' claim challenging the IUC's Final Decision is barred by sovereign immunity and must be denied for lack of jurisdiction.[6] *Williams Pipe Line Co.*, 964 F. Supp. at 1334 (denying the plaintiff's claim for a declaratory judgment due to lack of jurisdiction when the plaintiff failed to exhaust its administrative remedies as

---

[6] The plaintiffs have filed a nearly-identical petition for judicial review in Iowa District for Floyd County, which has now been transferred to Polk County. *See* 02341-CVCV032240 (Floyd). The plaintiffs' challenge to the IUC's Final Decision must be heard there.

14

prescribed by the Iowa APA); *see also Harmon v. Auger*, 768 F.2d 270, 275 (8th Cir. 1985) ("The Iowa Administrative Procedure Act is a comprehensive procedural plan established by State law. Violation of the Act is a violation of State law and not of due process. Jurisdiction to construe the State statute is in the State Courts of Iowa."). Similarly, the plaintiffs' claims against the IUC members regarding the allegedly arbitrary decision-making must also be dismissed on sovereign immunity grounds. *See Climbing Kites LLC v. Iowa*, 739 F. Supp. 3d 742, 761 (S.D. Iowa 2024) ("[A] federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when—as here—the relief sought and ordered has an impact directly on the State itself.") (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984)).[7]

### b.    Takings Clause

The plaintiffs assert a variety of claims under the Fifth Amendment's Takings Clause, apparently pursuant to 42 U.S.C. § 1983.[8]  They assert that plaintiffs Hirth, Hennings, Van Diest LLC and CCADC all own property that will be "encumbered by the Summit Carbon pipeline."  Doc. 3 at 1, ¶ 1; *Id*. at 10, ¶ 51.  Additionally, they contend that Summit Carbon's pipeline does not satisfy the constitutional requirements necessary for the exercise of eminent domain.  *Id*. at 13.  Two organizational plaintiffs

---

[7] As the plaintiffs' challenges to the IUC agency action are barred on sovereign immunity grounds, I find it unnecessary to address Summit Carbon's arguments regarding the court's discretion to decline supplemental jurisdiction.  Doc. 25 at 18-20.

[8] While the plaintiffs allege "Takings Clause" violations in their complaint, they never actually state that they seek to bring a claim under 42 U.S.C. § 1983.  Instead, they cite the Declaratory Judgment Act – asking the court to enter judgment pursuant to 28 U.S.C. §§ 2201 and 2202. As stated earlier, that Act is merely procedural and does not provide an "independent basis for federal jurisdiction." *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010); *see also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).  Nonetheless, the plaintiffs' failure to cite § 1983 in their complaint is not dispositive. *See Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014) ("[N]o heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim.").  Therefore, I will proceed as if the plaintiffs intended to assert claims pursuant to § 1983.

15

also assert Takings Clause claims on behalf of their members. One such plaintiff, Free Soil Foundation, is a § 501(c)(3) organization formed to "educate the public and defend Constitutional principles, in particular Fifth Amendment property rights, against unconstitutional eminent domain abuse" (*Id.* at 2, ¶ 4). The other, RLIJ, purports to be "an unincorporated association of Members of the Iowa General Assembly" (*Id.* at 1, ¶ 3). *See generally id.* at 3, ¶ 15.

### i.    *Sovereign Immunity*

First, I will address whether the plaintiffs' Takings Clause claims against IUC (and its members) are barred by sovereign immunity. Although the Supreme Court has not addressed the relationship between the Fifth and the Eleventh Amendment, the Eighth Circuit has held that the Eleventh Amendment bars Fifth Amendment Takings Clause claims "against the State in federal court as long as state courts remain open to entertain the action." *EEE Minerals, LLC v. State of N. Dakota*, 81 F.4th 809, 816 (8th Cir. 2023); *see also Heights Apartments, LLC v. Walz*, No. 23-2686, 2024 WL 4850745 (8th Cir. 2024) (per curiam) (holding that the district court correctly determined that sovereign immunity barred recovery against state officials in their official capacity for a Takings Clause claim as the plaintiffs did not assert that state courts were unavailable). Reformulating a Takings Clause claim as a request for an injunction to cure past injuries is similarly barred by the Eleventh Amendment. *EEE Minerals, LLC*, 81 F.4th at 816 ("In any event, equitable relief is unavailable to enjoin an alleged taking of private property where, as here, a remedy at law is available through a suit for just compensation in state court.").

Nonetheless, the Eighth Circuit has also held that the state court remedy must be adequate and available. In *Pharm. Rsch. & Manufacturers of Am. v. Williams*, Pharmaceutical Research and Manufacturers of America (PhRMA) filed suit on behalf of three of its members, alleging that the Alec Insulin Affordability Act (the Act) resulted in an unconstitutional taking under the Fifth Amendment. 64 F.4th 932, 936 (8th Cir.

2023).   This Act requires, in part, that pharmaceutical companies provide certain medications at no cost to qualifying applicants.  *Id*.  The court found that PhRMA's lawsuit against the Minnesota Board of Pharmacy was not barred by sovereign immunity. *Id*. at 950.  The court found that because PhRMA specifically requested "declaratory and injunctive relief," a "continuous series of state court actions seeking to compel an inverse condemnation proceeding for each of the thousands of units of insulin that PhRMA's members must provide under the Act is not an appropriate or available remedy."  *Id*. at 950 (emphasis omitted).

Here, like in *PhRMA*, the plaintiffs request declaratory and injunctive relief.  Doc. 3 at 3, ¶¶ 12-13.  However, the alleged Takings Clause violation in *PhRMA* concerning thousands of units of insulin is meaningfully different than the situation here – a few plaintiffs alleging that their real estate has been unlawfully taken.  Unlike in *PhRMA*, in which there was the potential for thousands of identical lawsuits regarding each unit of insulin, the alleged takings of real property here involve a small number of cases, each presenting unique facts and circumstances.  Therefore, the relief available in the Iowa state courts for an inverse condemnation action is sufficient to address this alleged violation.  *See Christ Vision, Inc. v. City of Keokuk*, 991 N.W.2d 543 (Table), 2023 WL 387070 at **4 (Iowa Ct. App. 2023) ("When deciding a claim of inverse condemnation, Iowa courts employ a three-part test. First question: is there a constitutionally protected private property interest at stake? Second, has the government "taken" that interest for public use? And third, has the property owner been justly compensated for the taken interest?") (citations omitted).  As such, the plaintiffs' Takings Clause claims against the IUC and its members are barred by sovereign immunity.

It appears that the plaintiffs also assert Takings Clause claims against Summit Carbon.  Doc. 3 at 13, ¶ 70 ("Summit must prove that the project satisfies the Constitutional requirement of 'public use' before using eminent domain to acquire land from unwilling property owners.").  They may maintain such claims against Summit

17

Carbon only if Summit Carbon is a state actor.[9] *See Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 715 (2010) ("In sum, the Takings Clause bars *the State* from taking private property without paying for it, no matter which branch is the instrument of the taking.") (emphasis in original); *see also Chicago, B. & Q.R. Co. v. City of Chicago*, 166 U.S. 226, 239 (1897).

Determining if a party is a state actor is not always a straightforward inquiry. *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (noting that the criteria for determining state action "lack rigid simplicity"). Indeed, the Supreme Court has held that:

> [S]tate action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'
>
> Our cases have identified a host of facts that can bear on the fairness of such an attribution. We have, for example, held that a challenged activity may be state action when it results from the State's exercise of 'coercive power,' when the State provides 'significant encouragement, either overt or covert,' or when a private actor operates as a 'willful participant in joint activity with the State or its agents.'

*Id.* at 295-96 (citations omitted). Here, the IUC issued a Final Decision approving a permit for Summit Carbon. Doc. 3 at 6, ¶ 34. Summit Carbon is able to pursue its pipeline project only because of the IUC's approval. As such, at this stage of the case, the plaintiffs have plausibly alleged that Summit Carbon is a state actor for purposes of a Takings Clause claim. *See Carlson v. Roetzel & Andress*, 552 F.3d 648, 651 (8th Cir. 2008) ("[T]his court has required joint action or conspiracy with state authorities" to find "private parties liable as state actors.").

### ii.    Ripeness

---

[9] The plaintiffs do not address this issue.

18

I will next consider whether the plaintiffs' Takings Clause claims against Summit Carbon are ripe. The defendants argue that the plaintiffs' claims are not ripe because no property has been taken without just compensation. Doc. 34-1 at 14. The plaintiffs contend that Summit Carbon publicly announced its plans to begin construction of parts of its project in 2026 (Doc. 40 at 4) and that waiting until condemnation proceedings begin would deprive the plaintiffs of necessary preventative remedies. *Id.* at 6.

"The touchstone of a ripeness inquiry is whether the harm asserted has 'matured enough to warrant judicial intervention.'" *Parrish v. Dayton*, 761 F.3d 873, 875 (8th Cir. 2014) (citation omitted). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* at 875-76. "A takings claim is ripe if 'the plaintiff has received a "final decision" from the relevant government actor' indicating how it will regulate or use the property." *Barber v. Charter Twp. of Springfield, Michigan*, 31 F.4th 382, 388 (6th Cir. 2022) (citing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 (1985), *overruled on other grounds* by *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180 (2019)). "The finality requirement is relatively modest." *Pakdel v. City & Cnty. of San Francisco, California*, 594 U.S. 474, 479 (2021) (noting that "nothing more than *de facto* finality is necessary") (emphasis in original).

Prior to 2021, the Supreme Court was skeptical about the ripeness of claims for injunctive relief predicated on Takings Clause violations. *See Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. at 201 ("As long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking."). However, in *Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021), the Court allowed the plaintiffs to proceed with their motion for a preliminary injunction even though a taking had not happened yet. *Id.* at 162. The Eighth Circuit has not yet addressed the relationship between *Cedar Point* and ripeness as it relates to takings claims. The Sixth Circuit has held that based on *Cedar Point*, "a claim for injunctive relief is ripe if the government has reached a final decision that will enable a future

19

taking." *Barber v. Charter Twp. of Springfield, Michigan*, 31 F.4th 382, 389 (6th Cir. 2022). I agree that this is the correct standard in light of *Cedar Point*. Because the IUC determined that Summit Carbon's project met the statutory requirements to receive a permit, and the plaintiffs allege that Summit Carbon is actively advancing this project with plans to begin construction next year, I find that the plaintiffs' Takings Clause claims are sufficiently ripe for adjudication.

### iii. Standing

Noting that the Final Decision has not yet caused any plaintiff's property to be subjected to eminent domain, the IUC argues that Hirth, Hennings, Van Diest and CCADC do not have standing to assert that the Final Decision violates the Takings Clause. Doc. 34-1 at 9-11. "Whether and to what extent the company will initiate condemnation proceedings for the project is left to Iowa's statutory eminent domain process." *Id.* at 10. The IUC contends that no stage of the condemnation process has begun, and therefore the plaintiffs have not suffered an injury necessary to maintain a Takings Clause claim, as it "is neither actual nor imminent and is not causally connected to the Commission's issuance of the Final Decision and Order." *Id.* at 11. The plaintiffs counter that the IUC's approval of Summit Carbon's permit creates an immediate and tangible threat to the plaintiffs' constitutionally protected property rights, as their properties have already been encumbered by Summit Carbon. Doc. 40 at 2.

Additionally, the IUC and Summit Carbon argue that plaintiffs RLIJ, Free Soil Foundation and King Intervenors lack organizational standing. Doc. 34-1 at 11; Doc. 25 at 20. The IUC asserts that these plaintiffs "make no specific allegations as to how they have been caused any concrete, actual, or imminent injury-in-fact" as plaintiffs merely provided general definitions of each association. Doc. 34-1 at 11-12. Summit Carbon contends that neither RLIJ nor Free Soil Foundation state that any member of their respective organization has property on the pipeline route or possibly would be injured by the IUC's Final Decision. Doc. 25 at 22. Instead, the complaint only pleads

20

"generalized concern, beliefs, and ideologies." *Id.* Additionally, the IUC contends that none of the plaintiff organizations meet the "germaneness" test and their claims require the participation of their members thereby defeating standing. Doc. 34-1 at 12-13. The plaintiffs contend that "RLIJ has standing because it was allowed to intervene in the underlying state administrative decision" and Free Soil Foundation members live along the pipeline route.[10] Doc. 32 at 9-10.

The Takings Clause of the Fifth Amendment, applicable to the states via the Fourteenth Amendment, states that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. Therefore, the government violates the Takings Clause when it takes property without compensation and "a property owner may bring a Fifth Amendment claim under § 1983 at that time." *Pharm. Rsch. & Manufacturers of Am. v. Williams*, 64 F.4th 932, 941 (8th Cir. 2023) (citing *Knick v. Township of Scott Pennsylvania*, 588 U.S. 180, 184 (2019)). "The Takings Clause 'provide[s] protection … against a direct appropriation of property—personal or real,' as well as against "a regulatory taking—a restriction on the use of property that [goes] too far." *Pharm. Rsch. & Manufacturers of Am.*, 64 F.4th at 947 (quoting *Horne v. Dep't of Agric.*, 576 U.S. 350, 360 (2015)) (quotations omitted).

I will address the standing of associational plaintiffs first.

[A]n association has standing to bring suit on behalf of its members when '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'

An 'organization lacks standing to assert claims of injunctive relief on behalf of its members where 'the fact and extent' of the injury that gives rise to the claims for injunctive relief 'would require individualized proof,' or where 'the relief requested [would] require[] the participation of individual members in the lawsuit.'

---

[10] The plaintiffs state that Kings Intervenors assert only a due process claim, not a Takings Clause claim. Doc 32 at 9.

*Id.* at 946–48 (quotations omitted) (citations omitted). The plaintiffs identify RLIJ as an "unincorporated association of members of the Iowa General Assembly." Doc. 3-1 at n.2. They do not allege any member of this association would have standing to bring a Takings Clause claim. Indeed, the plaintiffs do not plead that any member of the organization lives on the pipeline route or otherwise be injured by the IUC's Final Decision. Doc. 25 at 21; *see also* Doc. 3 at 1-2, ¶ 3 (RLIJ members "are concerned with the protection of Iowa's environment, protection of the rights and liberties granted [to] Iowans under the United States and Iowa Constitutions, and protection of the safety and well-being of Iowans generally."). Moreover, unlike *PhRMA*, in which the Eighth Circuit found that individualized proof was not necessary to show that the Alec Smith Insulin Affordability Act required the taking of insulin, individualized proof would be necessary to show that a member's land has been subject to an unlawful taking. *See* 62 F.4th at 948. The plaintiffs' argument that RLIJ has standing because it was allowed to intervene in the underlying state administrative decision is frivolous, as that is not one of the criteria for associational standing. *See* Doc. 32 at 9.

Similarly, Free Soil Foundation's Takings Clause claim fails on standing grounds. The plaintiffs allege that Free Soil Foundation is a 501(c)(3) organization that was formed to "educate the public and defend Constitutional principles." Doc. 3 at 2, ¶ 4. In the plaintiffs' pleadings, they do not identify any Free Soil members who would have standing to bring a Takings Clause claim. However, in their resistance to the IUC's (and its members) motion to dismiss, the plaintiffs assert that some Free Soil Foundation members "live along the pipeline route" and "their environmental and constitutional concerns qualify as injuries sufficient to invoke protection." Doc. 32 at 10. Plaintiffs offer no other factual allegations in support of this conclusory assertion. Moreover, like the claims brought by RLIJ, individualized proof would be necessary to show that a member's land has been subjected to an unlawful taking. Therefore, Free Soil Foundation's Takings Clause claims will be dismissed for lack of standing.

As for Hirth, Hennings Joint Trust, Van Diest LLC and CCADC, the amended complaint alleges that Hirth, Hennings and Van Diest all own property that will be encumbered by the Summit Carbon pipeline. Doc. 3 at 1, ¶ 1. Additionally, the plaintiffs allege that Summit Carbon's pipeline would bisect CCADC's Avenue of the Saints Development Park. *Id.* at 10, ¶ 51. Based on my finding that the plaintiffs' claims are ripe, I will assume that the plaintiffs satisfy the injury and causation requirements to bring a Takings Clause claim.

Therefore, the crux of the analysis is redressability. The Eighth Circuit has stated that "[d]etermining the adequacy of a state remedy is crucial to the redressability component of the standing analysis." *Pharm. Rsch. & Manufacturers of Am. v. Williams*, 64 F.4th 932, 941–42 (8th Cir. 2023). Although the Supreme Court's decision in *Cedar Point* created a pathway for a plaintiff to obtain injunctive relief for a Fifth Amendment Takings Clause violation, the Eighth Circuit has reiterated that in determining whether equitable relief is available to a property owner asserting a takings claim, a court must 'identify[] any alternative cause of action' and 'examin[e] the adequacy thereof.'" *Id.*; *compare Cedar Point*, 594 U.S. 139, 162 (2021). As I have previously found, the inverse condemnation procedure available in the Iowa state courts is adequate to redress the plaintiffs' Takings Clause claims. *See supra* Section IV.A.1.b.i. Because an adequate state remedy is available, the individual plaintiffs' Takings Clause claims against Summit Carbon fail for lack of standing as they do not satisfy the redressability requirement.

### c.   *Procedural Due Process*

Plaintiffs Hirth, Hennings Joint Trust, Van Diest LLC and Kings Intervenors allege that they were denied procedural due process in violation of the Fifth

Amendment.[11]  The complaint contends that Bob Van Diest's "testimony was limited in time and scope, disregarded by the board, and thus he was denied due process."  Doc. 3 at 5, ¶ 27.  Additionally, the complaint alleges that Kerry Hirth was "denied due process due to the IUC constantly changing speaker rules and policies and subsequent issues with being denied the ability to testify."  *Id.* at ¶ 28.  Finally, the complaint states that Carole Hennings intended to testify through former Congressman Steve King, but when it was his time to testify, "the chairman allowed no response."  *Id.* at ¶ 29.  As an initial matter, I must determine if subject matter jurisdiction exists over these claims.  *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009).

### i.  Ripeness

In general, plaintiffs are not required to exhaust state administrative remedies prior to bringing an action pursuant to 42 U.S.C. § 1983.[12]  *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 516 (1982).  The Eighth Circuit has recognized an exception to this general rule and requires that a litigant asserting a deprivation of procedural due process exhaust state remedies before bringing a claim in federal court.  *Hopkins v. City of Bloomington*, 774 F.3d 490, 492 (8th Cir. 2014); *Wax 'n Works v. City of St. Paul*, 213 F.3d 1016, 1019 (8th Cir. 2000); *see also Keating v. Nebraska Public Power Dist.*, 562 F.3d 923, 929 (8th Cir. 2009).  "However, it is not necessary for a litigant to have exhausted available *postdeprivation* remedies when the litigant contends that he was entitled to *predeprivation* process."  *Keating*, 562 F.3d at 929 (emphasis in original).  As such, "the

---

[11] Although not made explicit by the plaintiffs, I assume that the plaintiffs intend to assert a Fifth Amendment procedural due process violation only against the IUC and its members, as due process rights are protected only against infringement by state actors.  *See* U.S. Const. amend. XIV, § 1.  In their complaint, the plaintiffs allege that the actions of the IUC, not Summit Carbon, deprived them of due process.  Doc. 3 at 5.

[12] As with the Takings Clause claims, the amended complaint does not cite 42 U.S.C. § 1983 with respect to the procedural due process claims.  For the reasons stated earlier, I will proceed as if the plaintiffs properly alleged a 42 U.S.C. § 1983 claim.

effect of [a plaintiff's] failure to pursue available post-[deprivation] remedies depends on whether the [litigants] allege[] the deprivation of pre-[deprivation] process or post-[deprivation] process." *Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927, 936 (8th Cir. 2012). Since the plaintiffs allege that they were denied pre-deprivation process during the IUC's hearings, they do not have to exhaust state administrative remedies before bringing such claims in federal court. Therefore, the plaintiffs' procedural due process claims are ripe.

### ii. Standing

Courts are cautious with the standing analysis as it relates to procedural due process claims, as it often overlaps with the merits of the case. *Brooks v. Butler Cnty., Ohio*, No. 21-4129, 2022 WL 2526601, at *4 (6th Cir. July 7, 2022) ("We are cautious with this analysis because injury in fact and the merits of whether a protected property interest exists when a party brings a procedural due process claim are often intertwined."); *see also Hughes v. Cedar Rapids*, 840 F.3d 987, 993 (8th Cir. 2016) ("Determining the adequacy of the process is generally a merits question, even if a plaintiff does not use the process provided").

The plaintiffs assert that "Hirth, Hennings and Van Diest are all petitioners whose property will be encumbered by the Summit Carbon pipeline." Doc. 3 at 1, ¶ 1. The defendants do not appear to contest that Hirth, Hennings and Van Diest have standing, and the Eighth Circuit has held that plaintiffs do not have to avail themselves of the process that the defendant provided to state an injury for a procedural due process claim. *See Hughes*, 840 F.3d at 994 ("The allegations that the procedure is inadequate—even if drivers shun it—sufficiently establishes an injury in fact for Article III standing."). Additionally, Hirth's, Hennings' and Van Diest's injuries are directly traceable to the IUC and if the court enjoins the IUC's decision, the plaintiffs' injuries are redressable. *Id.* Therefore, Hirth, Hennings and Van Diest have standing to assert a procedural due process claim.

25

On the other hand, Kings Intervenors' procedural due process claim does not satisfy the standing requirements. The amended complaint fails to identify the members of this group. The plaintiffs simply allege that the members "were denied due process of law during the process," without further explanation. Doc. 3 at 2, ¶ 5. In their response to Summit Carbon's motion to dismiss, the plaintiffs admitted that Kings Intervenors are not landowners, but they maintain that their "procedural injury" of being denied a meaningful opportunity to be heard satisfies the injury-in-fact requirement. Doc. 32 at 9. They are wrong. The Supreme Court has held that the opposite is true. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing.") (emphasis in original); *see State v. Biden*, 52 F.4th 362, 370 (8th Cir. 2022) (same). Therefore, Kings Intervenors' procedural due process claim fails on standing grounds as they have not plausibly alleged an injury in fact.

### iii. *Sovereign Immunity*

I will next address whether Hirth's, Hennings' and Van Diest's procedural due process claims are barred by sovereign immunity. The IUC argues that it is a state agency within the Iowa Department of Commerce, and therefore all the plaintiffs' claims against it are barred by sovereign immunity. Doc. 34-1 at 15. The plaintiffs maintain that since IUC exceeded its lawful authority, the "shield of sovereign immunity" is removed, and the Eleventh Amendment is not a bar to enjoining unconstitutional state actions. Doc. 40 at 11-12.

Regarding the plaintiffs' procedural due process claims, "[i]n determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Pharm. Rsch. & Manufacturers of Am. v. Williams*, 64 F.4th 932, 949 (8th Cir. 2023) (quoting

26

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (cleaned up). Here, the plaintiffs seek prospective injunctive and declaratory relief. *See Johnson v. Griffin*, 69 F.4th 506, 513 (8th Cir. 2023) ("The defendants here are not immune from suit under the Eleventh Amendment because [the plaintiff] seeks prospective declaratory and injunctive relief. . ..").

Although unaddressed by the Eighth Circuit, other courts have held that when a plaintiff asserts a procedural due process claim and the plaintiff "was eventually given an opportunity to tell his side of the story," a plaintiff had at most [claimed] a past rather than an ongoing violation of federal law[;]" such "past" claims are barred by the Eleventh Amendment. *Sherwood v. Marchiori*, 76 F.4th 688, 695 (7th Cir. 2023) (quoting *Sonnleitner v. York*, 303 F.3d 704, 718 (7th Cir. 2002)). On the other hand, courts have found that where a plaintiff was never given "chance to 'tell [their] side of the story,'" such an injury is properly characterized as an "ongoing" violation such that sovereign immunity does not bar their claims. *Marchiori*, 76 F.4th at 696; *see also Trello v. McKeighan*, 624 F. Supp. 3d 150, 156 (N.D. N.Y. 2022) (finding an "ongoing violation" of a plaintiff's procedural due process rights where she did not receive "notice or a hearing" to challenge her revoked firearms and license); *see also Columbia Financial Corp. v. Stork,* 702 Fed. Appx. 717, 720-21 (10th Cir. 2017) (holding that a defendant's alleged due process violation is ongoing because the plaintiff asserts that it has still not received a meaningful hearing).

Here, Hirth, Van Diest and Hennings allege that they were not given the chance to testify – either at all or meaningfully. *See* Doc. 3 at 5. Although the defendants take issue with the merits of these claims (Doc. 25 at 13-15 *and* Doc. 34-1 at 6-8), that is immaterial to the sovereign immunity analysis. *See Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 646 (2002) ("[T]he inquiry into whether suit lies under *Ex Parte Young* does not include an analysis of the merits of the claim."). I find that the procedural due process claims asserted by plaintiffs Hirth, Van Diest and

Hennings are not barred by sovereign immunity. I will next address whether they state a claim upon which relief may be granted.

## B. Rule 12(b)(6) Analysis

### 1. Procedural Due Process Claims

Hirth's, Hennings' and Van Diest's procedural due process claims are the only claims that survive the justiciability doctrines. The defendants argue that the plaintiffs have failed to show that they had the "requisite interest to maintain such a claim." Doc. 25 at 13; *see also* Doc. 34-1 at 7-8. Summit Carbon further asserts that the plaintiffs' complaint pleads factual allegations only as to Hirth's and Hennings' procedural due process claims. Doc. 25 at 13. Finally, Summit Carbon contends that "notice and a meaningful opportunity to be heard were provided by the Commission" and as such the plaintiffs' claims should be dismissed. *Id.* at 14. The plaintiffs counter that the IUC "only allowed a few minutes of testimony by members of the public, and they were quickly cut off." Doc. 40 at 8. They contend that the "lack of adequate procedural safeguards in the IUC's process deprived property owners of meaningful opportunities to be heard." *Id.*

The Eighth Circuit has held that to state a procedural due process violation, a plaintiff must show a "deprivation of life, liberty, or property without sufficient process." *Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987, 994 (8th Cir. 2016).

> To determine the kind of process due, courts balance three factors: 1) the nature and weight of the private interest affected by the challenged official action; 2) the risk of an erroneous deprivation of such interest as a result of the summary procedures used; and 3) the governmental function involved and state interests served by such procedures, as well as the administrative and fiscal burdens, if any, that would result from the substitute procedures sought.

*Id.* In applying these factors, the Supreme Court "usually has held that the Constitution requires some kind of hearing before the state deprives a person of liberty or property."

*Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis omitted). "Due process claims involving local land use decisions must demonstrate the government action complained of is truly irrational, that is something more than arbitrary, capricious, or in violation of state law." *Pietsch v. Ward County*, 991 F.3d 907, 910 (8th Cir. 2021) (quoting *Koscielski v. City of Minneapolis*, 435 F.3d 898, 902 (8th Cir. 2006)). "Assuming a landowner has a protectible property interest, procedural due process is afforded when the landowner has notice of the proposed government action and an opportunity to be heard." *Pietsch*, 991 F.3d at 910 (quoting *Anderson v. Douglas Cty.*, 4 F.3d 574, 578 (8th Cir. 1993)).

As discussed earlier, matters outside the pleadings cannot be considered when deciding a Rule 12 motion to dismiss but "documents necessarily embraced by the complaint are not matters outside the pleading." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). This includes "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." *Id.* The Eighth Circuit explained:

> While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;" without converting the motion into one for summary judgment.

*Id.* While the IUC's Final Decision and other documents in the public record were not attached to the plaintiffs' complaint, because no party contests their authenticity, I find that it is proper to consider these documents as part of the record.

Here, the plaintiffs allege that Hirth was denied due process "due to the IUC constantly changing speaker rules and policies and subsequent issues with denied the ability to testify." Doc. 3 at 5, ¶ 28. Additionally, the plaintiffs assert that although Van Diest testified on September 26, 2024, his testimony was "limited in time and scope" and

29

"disregarded by the board" and therefore, "he was denied due process." *Id.* at ¶ 27. They are wrong. Hirth and Van Diest both testified before the IUC and the IUC explicitly considered both of their testimonies in making its decision. *See* Iowa Utilities Commission, Final Decision and Order, Filing ID: 4686406, 122-23, 441, 462-63 [hereinafter *Final Decision*]. This meets the requirements of procedural due process. *See Gordon v. Hansen*, 168 F.3d 1109, 1114 (8th Cir. 1999) (finding that a plaintiff failed to state a claim as he received the "procedural safeguards that the Due Process Clause requires" by "avail[ing] himself of the administrative hearing process to contest the Emergency Orders and appeal[ing] the Department's orders").

Moreover, Hennings' claim that she was unable to testify at the hearing through former Congressman Steve King fails as a matter of law, as constitutional rights are non-delegable and generally can only be waived by the holder. *Broadrick v. Oklahoma*, 413 U.S. 601, 610–11 (1973). Additionally, as Summit Carbon notes, Hennings was granted intervention in this case but withdrew it on October 12, 2023.[13] In her withdrawal, Hennings stated that she "did not realize that [she] had to file a pre-filed testimony to address her objections" and noted that she understood that she had the "right to present [her] objection to the use of Eminent Domain on [her] Exhibit H property along with the objections to the violation of [her] property rights by the [Commission] and Summit Carbon Solution." *Id.* This demonstrates that Hennings received notice and an opportunity to be heard. She simply failed to take advantage of it.

Additionally, the IUC explicitly addressed how it provided procedural due process in its decision-making process:

> As it relates to due process arguments, the Board simply notes it conducted a hearing for eight weeks, which amassed a transcript spanning nearly 7,500 pages. The Board has received and reviewed almost 4,200 comments, including admitting more than 600 comments filed after the

---

[13] *See* Carole Hennings, Withdrawal of Intervention and Request to Testify, Iowa Utilities Commission, Filing ID 4538600 (Oct. 12, 2023), iowa5.sharepoint.com/:b:/s/IUB-EFS-PROD/EX079w6EVx1EteX1lsG_Dt4BgoX_aJofgBsGYhva3vfPzA.

submission deadline. The Board received and reviewed approximately 50,000 pages of prefiled testimony and exhibits from hundreds of witnesses — experts and landowners alike.

During the hearing, the Board made great exceptions to its rules to allow parties to file untimely testimony, to cross-examine witnesses that generated unduly repetitive testimony, and to remove all guards normally adhered to during a Board proceeding, all in the interests of justice to ensure landowners were able to provide their testimony to the Board.

In addition to the events at hearing, the Board sent mailers to all Exhibit H landowners in June 2023 to ensure they were made aware of their options to participate in the hearing. The Board provided landowners with options ranging from testifying at the hearing, to submitting comments, to mediation, to not wanting any further contact. The Board received feedback from landowners regarding all of these options. The Board finds it provided due process to all those involved, and to claim otherwise ignores the facts and events of this case.

*Final Decision* at 470; *see also* Doc. 25 at 13-14. Hirth, Hennings and Van Diest all received notice and an opportunity to be heard at the IUC's hearings. Therefore, none of them have alleged a plausible claim for a procedural due process violation.

Because Hirth, Hennings and Van Diest all participated in the pre-deprivation proceedings, they are actually challenging the outcome of the process (the IUC's Final Decision), which is not a permissible basis for a procedural due process claim. *See Target Training Int'l, Ltd. v. Lee*, 1 F. Supp. 3d 927, 951 (N.D. Iowa 2014) ("[E]ven to the extent that [the plaintiff] attempts to state a due process claim based on fundamental unfairness, it has done nothing more than 'cloak an abuse of discretion argument in constitutional garb,' which is 'insufficient to justify judicial review.'") (quoting *Tamenut v. Mukasey*, 521 F.3d 1000, 1005 (8th Cir. 2008) (cleaned up)). Therefore, the procedural due process claims will be dismissed for failure to state a claim.

**2. *Leave to Amend***

31

Neither party addressed whether permitting the plaintiffs to amend their complaint would be proper. As the plaintiffs did not submit a proposed amendment when faced with motions to dismiss, I find that they should not be permitted to amend their pleadings. *See In re 2007 Novastar Fin. Inc., Sec. Litig.*, 579 F.3d 878, 884–85 (8th Cir. 2009) ("[I]n order to preserve the right to amend the complaint, a party must submit the proposed amendment along with its motion.") (quoting *Clayton v. White Hall Sch. Dist.*, 778 F.2d 457, 460 (8th Cir. 1985)); *see also Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 914 (8th Cir. 2002) ("[T]he district court was not required to engage in a guessing game" when the plaintiffs failed to explain how they would amend the complaint to save their claims.").[14]

## V.     CONCLUSION

For the reasons stated herein, both motions (Docs. 21, 34) to dismiss are **granted** and this action is hereby **dismissed**.

**IT IS SO ORDERED** this 11th day of March, 2025.

_____
Leonard T. Strand
United States District Judge

---

[14] I find is unnecessary to address the defendants' abstention arguments, as all claims fail under either Rule 12(b)(1) or Rule 12(b)(6). *See* Doc. 25 at 7-12; *see also* Doc. 34-1 at 17.